# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| NIKITA MARIE CEARLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-16-127-SPS |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration,[1] | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Nikita Marie Cearley requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of

---

[1] On January 20, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn Colvin as the Defendant in this action.

such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born September 4, 1986, and was twenty-seven years old at the time of the administrative hearing (Tr. 35, 175). She completed twelfth grade, and has previously worked as a cashier II, change booth cashier, cleaner housekeeper, and food service worker (Tr. 27, 202). The claimant alleges inability to work since February 1, 2011, due to bipolar disorder, paranoia, depression, and anxiety (Tr. 201).

## Procedural History

On November 21, 2012, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. The applications were denied. ALJ James Bentley conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated June 17, 2014 (Tr. 18-28). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform a full range of work at all exertional levels, but with the nonexertional limitations of being limited to simple,

repetitive tasks with routine supervision, only occasional contact with supervisors and co-workers, and no work-related contact with the general public (Tr. 23). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because she could perform the requirements of a representative occupation such as silver wrapper (Tr. 26-27).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly weigh the opinion of her treating physician, Dr. Wellie Adlaon, and (ii) because she lacks the RFC to perform significant gainful activity. Because the ALJ does appear to have ignored probative evidence regarding the claimant's impairments, the decision of the Commissioner must be reversed.

The ALJ determined that the claimant had the severe impairments of mood disorder, post-traumatic stress disorder (PTSD), methamphetamine abuse in remission, alcohol abuse in remission, cannabis abuse in remission, paranoid personality, major depressive disorder, attention deficit hyperactivity disorder, and personality disorder, as well as the nonsevere impairments of insomnia, severe hemorrhoids, asthma, obesity, and Bell's palsy (Tr. 21). The relevant medical evidence demonstrates that the claimant was largely treated for basic medical care at the Choctaw Nation Health Center in McAlester, Oklahoma (Tr. 302-333). The claimant also received mental health treatment and medication management from Dr. Wellie Adlaon in McAlester. His treatment notes reflect a diagnosis of adjustment disorder (Tr. 394-415, 418-427). In May 2012, he noted she was still reporting racing thoughts and that she had minimal though content and

-4-

abnormal concentration in that she could not maintain it (Tr. 398). Almost a year later, in April 2013, he again noted that she had been having episodes of impulse control and anger that was difficult to control, and complained of persistent depression and anxiety (Tr. 412). On that day, he noted her concentration was normal but occasionally decreased (Tr. 412).

On May 22, 2012, the claimant was hospitalized at Muskogee Regional Medical Center upon expressing complaints of suicidal thoughts, auditory and visual hallucinations, delusions, poor concentration, and insomnia (Tr. 282). She was released two days later reporting no more auditory of visual hallucinations, and making no delusional statements (Tr. 282). Her discharge diagnosis included bipolar disorder I most recent episode depressed, severe, with psychotic features (Tr. 282).

On January 16, 2013, Dr. Adlaon completed a treating physician mental functional assessment questionnaire, indicating that she had an adjustment disorder with mixed anxiety and depressed mood, as well as delusional disorder, and that the signs and symptoms included recurring depression and suicidal ideation, as well as delusional thinking (Tr. 337). It also appears that the claimant's social worker, Ivora Sensibough, stated on this same form that the claimant had a serious and persistent mental illness, that she isolates and engages in self-mutilation, and that she was unable to work due to low occupational and social functioning, as well as significantly impaired mental functioning (Tr. 337).

On February 4, 2013, Dr. Kathleen Ward conducted a mental status examination of the claimant (Tr. 338). She noted the claimant was disheveled with bodily odor

present, although her hair appeared clean, that she made almost no eye contact, and that it was difficult to redirect her once she got on the topic of her childhood abuse (Tr. 340). She also appeared to have deficits in social judgment and problem solving, and Dr. Ward found that the claimant was jealous and easily enraged but had the insight that her rage was irrational (Tr. 341). Dr. Ward assessed her with PTSD, amphetamine abuse, alcohol abuse, and mood disorder (Tr. 341). Furthermore, she stated that the claimant needed support in parenting, but was suspicious of others and would likely be resistant to intervention (Tr. 341).

On March 14, 2013, the claimant was again hospitalized after indicating increased mood swings with anger outbursts and feelings of rage, and that she had purchased a baseball bat to use to beat her cousin for not paying her money he owed (Tr. 370). This came after she found out she was pregnant and quit taking all of her medications (Tr. 370). She was discharged on March 19, with a diagnosis including mood disorder, NOS, and PTSD, and the prognosis was guardedly optimistic depending on follow-up care and treatment compliance (Tr. 372).

On March 18, 2013, Ms. Sensibaugh completed a mental RFC questionnaire again noting the same diagnoses as discussed by Dr. Adlaon, and stating that the claimant's suicidal/homicidal ideations, delusional thinking and symptoms were substantial and contributed to low occupational, social, and marital functioning (Tr. 363). She then completed a checklist indicating a number of signs and symptoms, including impairments of impulse control and illogical thinking (Tr. 364). On March 21, 2013, Ms. Sensibaugh's notes characterized the claimant as angry, anxious, and depressed, and

indicated, *inter alia*, that she was unable to be in a stressful environment and unable to make reasonable and rational decisions; unable to seek employment; and unable to work under pressure (Tr. 381). December 2013 treatment notes again stated the claimant had a significant impairment in social/occupational functioning, and was unable to be in a fast-paced or stressful work environment due to severe social anxiety (Tr. 432). This was reiterated again in February 2014 treatment notes (Tr. 438).

On May 4, 2013, Dr. Adlaon completed a number of forms regarding the claimant's mental status and ability to work. He indicated that the claimant had an inability to concentrate and stay on task due to racing thoughts and that episodes of major depression caused anxiety and lack of drive, such that she would miss about three or more days of work per month (Tr. (Tr. 387). He also noted that she had an inability to adjust to workplace changes and stress secondary to co-workers when she had episodes of mood swings and depression (Tr. 388). He indicated her diagnoses included paranoid personality disorder and adjustment disorder mixed, stating she had been stable for the past six to eight months with counseling and medications (Tr. 389). In response to a question regarding clinical findings, he stated that the claimant presented with major depression and paranoid thoughts and anxiety, mood swings, and that she had stabilized with medications and counseling (Tr. 389). He gave her a good prognosis (Tr. 389). He stated that his opinion applied beginning May 17, 2012 (Tr. 393).

State reviewing physicians indicated that the claimant had moderate limitations in the three areas of functional limitations and no episodes of decompensation of extended duration (Tr. 354). Additionally, a reviewer indicated that the claimant had marked

limitations in the areas of understanding and remembering detailed instructions, carrying out detailed instructions, and interacting appropriately with the general public, as well as the moderate limitations of sustaining an ordinary routine without special supervision, working in coordination with or proximity to others without being distracted by them, getting along with co-workers or peers without distracting them or exhibiting behavioral extremes, and responding appropriately to changes in the work setting (Tr. 358-359). He then concluded that the claimant could perform simple tasks with routine supervision, relate to supervisors and peers on a superficial work basis, could not relate to the general public, but could adapt to a work situation (Tr. 360).

The claimant asserts that the ALJ erred in formulating her RFC, and the Court agrees. The medical opinions of treating physicians are entitled to controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). When a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight. The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to

the ALJ's attention which tend to support or contradict the opinion. *Watkins*, 350 F.3d at 1300-1301, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to reject a treating physician's opinion entirely, he is required to "give specific, legitimate reasons for doing so." *Id.* at 1301 [quotations and citations omitted].

Likewise, the opinions of physicians such as consultative examiners must be evaluated for the proper weight. "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider [the *Watkins*] factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

In his written opinion, the ALJ summarized the claimant's hearing testimony as well as the medical evidence in the record, including Dr. Ward's consultative examination and Dr. Adlaon's treating physician opinion and treatment notes. After summarizing the claimant's two hospitalizations and Dr. Ward's assessment, the ALJ noted that those records indicated the claimant could not maintain concentration and was unable to respond appropriately at times, which would prevent her from performing more than simple work, and that her anxiety would preclude her from working with the public or having more than occasional contact with others (Tr. 24). The ALJ stated that he

could "appreciate" the claimant's two inpatient stays, but that treatment notes indicated the claimant had good sleep, appropriate dress, normal mood, normal concentration, and appropriate thought content and she even once reported she was doing well (Tr. 24-25). He attributed reports of increased anxiety and depression to stressors at home and pregnancy, and found them to be "generally normal" (Tr. 25). The ALJ then gave Dr. Adlaon's opinion little weight because: (1) his opinion was not consistent with treatment notes; (2) it was not supported by Dr. Ward's consultative exam because her exam revealed intact concentration and memory, cooperative behavior, and good eye contact; and (3) the claimant improved with treatment, as evidenced by her inpatient stays (Tr. 25).

The ALJ was required to evaluate for controlling weight any opinions as to the claimant's functional limitations expressed by her treating physicians. The ALJ erred in failing to conduct the requisite analysis with regard to the treating, consultative, and reviewing physician opinions in the record. Although the ALJ noted the proper analysis at the outset of step four, he failed to properly apply it when he ignored the evidence in the record and instead imposed an RFC that would avoid a finding of disabled, while improperly rejecting the evidence as to her mental limitations, particularly related to the claimant's ability to concentrate and be around other people.

More particularly, the ALJ engaged in improper picking and choosing in order to avoid finding the claimant disabled. For instance, the second reason for assigning little weight to Dr. Adlaon's opinion was based on an erroneous recounting of the evidence. The ALJ relied on the claimant's cooperation and eye contact with Dr. Ward to counter

Dr. Adlaon's assessment, but Dr. Ward's own opinion actually found the claimant made almost no eye contact, was difficult to redirect, and was resistant to necessary intervention. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-386 (7th Cir. 1984). Thus, the ALJ's error in evaluating Dr. Adlaon's opinion necessarily implicates an error in evaluating Dr. Ward's assessment as well. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability.").

Furthermore, the ALJ's third reason for essentially rejecting Dr. Adlaon's opinion was based on the claimant's improvement upon discharge from multiple inpatient hospitalizations for her mental impairments. In doing so, however, the ALJ disregarded the highly structured environment the claimant experienced during her lengthy hospitalization. *See, e. g.*, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(6)(b) ("[A claimant's ability to complete tasks in settings that are highly structured, or that are less demanding or more supportive than typical work settings does not necessarily demonstrate [a claimant's] ability to complete tasks in the context of regular employment during a normal workday or workweek.").

Because the ALJ failed to properly evaluate the evidence available in the record, the decision of the Commissioner must be reversed and the case remanded to the ALJ for a proper analysis in accordance with the appropriate standards. If such analysis results in

adjustment to the claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

The Court hereby FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner is accordingly REVERSED and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 25th day of September, 2017.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**